The People of the State of New York ex rel. James Low and Others, v. George W. Wright, as Mayor, and Others, Constituting the Common Council of the City of Niagara Falls, and Others.

*General city tax — provisions of the charter of the city of Niagara Falls — substantial compliance therewith.*

The act of incorporation of the city of Niagara Falls (Chap. 143 of the Laws of 1892) provides that no tax can be ordered except by the concurring vote of a majority of all the members of the common council in office, and that for the purposes of the general city tax in each year the common council shall make a careful estimate of all expenses of the city for the current year, not to exceed one per cent of the assessed valuation, such estimate to be made, in detail, of the amounts severally required for the purposes enumerated.

The common council committed the making of the estimate for the year 1892 to its finance committee, which made and reported a detailed estimate, within the prescribed limit, to the common council, and asked to have the city clerk instructed "to spread the tax roll" accordingly. This report was approved and adopted by the requisite vote of the common council necessary to order a tax.

*Held,* that the action thus taken constituted a substantial compliance with the requirements of the statute, in respect to fixing the amount, and the ordering of the tax.

That as the purpose to levy the tax and have it collected was plainly manifested, and substantially in the manner provided by law, the tax should not be annulled for mere technical defects.

Certiorari to the common council and other officers of the city of Niagara Falls, to review their proceedings in respect to the ordering, levying and collecting of the general city tax for the year 1892.

*Eugene Cary,* for the relators.

*W. J. Byam* and *W. Caryl Ely,* for the defendants.

Dwight, P. J.:

The return of the defendants was not traversed and there are no facts in dispute.

By the act of incorporation of the city of Niagara Falls, its common council consists of the mayor and eight aldermen. (Laws of 1892, chap. 143, § 30.) The mayor has no vote except in case of a tie. (Id. § 33.) A majority of the common council is a quorum for the transaction of business, but no tax can be ordered " except by a concurring vote of a majority of all members of the common council in office, which vote shall be by yeas and nays, and a record thereof be entered at large in the minutes." (Id. § 34.)

For the purposes of the general city tax in each year, the common council is required to make a careful estimate of all expenses of the city for the current year, other than for school purposes ; the aggregate of such estimate not to exceed one per centum of the assessed valuation of the real and personal property of the city; such estimate to be made in detail, of the amounts severally required for the purposes enumerated. (Id. §§ 178, 225.)

This act provides that, for the purposes named in such estimate and within the limitation before mentioned, the common council has power to raise by tax from the taxable inhabitants and property of the city such sums of money as they may deem proper. (Id. § 178.) By section 183, it provides in what manner such tax shall be spread upon the assessment roll; that such assessment roll, when completed, with the tax spread thereon, shall be filed with the city clerk, shall be by him reported to the common council, and, upon being approved and confirmed by the common council, shall be a lien upon the real estate described therein.

In the case in hand the matter of making the estimate above mentioned, was duly committed by the common council to its finance committee, who, at a meeting of the common council duly held on the 3d day of October, 1891, made the following report and recommendation:

" *To the Common Council:*

" We respectfully submit the following budget as an estimate of our running expenses for the fiscal year ending the first Tuesday in February, 1893:

| | | |
|---|---|---|
| Police fund..................................... | $8,500 | 00 |
| Highway fund ................................. | 20,000 | 00 |
| Health fund .................................. | 1,000 | 00 |
| Lighting fund................................. | 13,000 | 00 |
| Water fund.................................... | 500 | 00 |
| Sewer fund.................................... | 1,000 | 00 |
| Fire department fund .......................... | 5,000 | 00 |
| Contingent fund............................... | 24,000 | 00 |
| Total ....................................... | $73,000 | 00 |

"Making a total assessment of $73,000 upon the assessment roll.

"The total assessment of the value of all personal property and real estate is $8,899,655. As we cannot raise but 1 per cent of the total valuation this year, which amounts to .........  $88,996 55

Less $\frac{3}{10}$ of 1 per cent for paving.................  26,698 96

Leaves us ..............................  $62,297 59

Estimated receipts for licenses, fines, etc...........  12,000 00

$74,297 59

"And we hereby submit the above report as the estimate of the. finance committee, and would ask that the city clerk be instructed. to spread the tax roll according to the above report, immediately.

"FRANK E. EAMES,<br>"FRANK E. SMITH."

At this meeting there were present the mayor and six aldermen. It was moved that the above report be approved and adopted. The vote was taken by ayes and nays and all present voted in the affirmative; all of which appears entered in the minutes of the meeting, which also contain the names of the aldermen present and voting.

We are of the opinion that the action thus taken and recorded by the common council constituted substantial compliance with the requirements of the statute in respect to fixing the amount of and ordering the general city tax to be levied and collected in the year 1892. There is in the statute no provision in terms requiring the common council to do either of these things, yet the duty of the common council to do both is plainly implied. In one of the pro-

visions quoted, the power is conferred to raise the necessary moneys for certain purposes by taxation, and in another the character of the vote is prescribed by which the tax shall be ordered. The provision in respect to an estimate of the expenses of the city for the current year to be carefully made in items and within a fixed limitation, can have no other purpose than to fix the amount of the tax to be laid, and the adoption of such estimate and the direction that the amount so fixed be spread upon the roll, seems to leave nothing undone towards the " ordering" of the tax. All this is accomplished by the action of the common council above recorded. The careful estimate in items was made by the appropriate committee and reported to the board, and this was made the action of the board by its vote approving and adopting the report of the committee. Moreover, the committee recommended that the tax thus ascertained in amount be spread upon the assessment roll by the city clerk, and this action was ordered by the board when the recommendation of the committee was adopted. The action of the common council then, of the third of October, was, we think, substantially equivalent to a formal resolution by that board reciting the report and recommendation of the committee and resolving, severally, in accordance with each, and the vote by which that action was taken was in strict compliance with the statute; a majority of all the members of the common council in office was present, in the persons of the six aldermen, not counting the mayor, and the motion was adopted by the unanimous vote of that majority, taken by ayes and nays, and entered in the minutes.

The statute is silent as to who shall spread the tax upon the assessment roll, though very explicit as to how it shall be done; it was done in this case by the city clerk by direction of the common council, and being reported by him to the common council at a meeting of the tenth of October, was approved and confirmed by them by vote of a majority of the quorum present. The contention of the relators has been that this action required the concurrent vote of a majority of all the members of the common council in office; but such is, of course, not the case if, as we hold, the previous action of the third of October was the " ordering of the tax," which plainly, this action of October tenth could not have been. Either the tax had been previously ordered or it was never ordered at all.

It certainly was not ordered by a vote of the common council which adopted and confirmed the clerical work of spreading the tax upon the assessment roll; that action necessarily presupposes the ordering of the tax.

But it is urged, on the part of the relators, that the report of the finance committee, by the adoption of which, as we hold, the amount of the tax was fixed and the tax ordered, was so indefinite and ambiguous as not at all to fix the amount of the tax to be levied, and to leave a wide margin to the merely clerical officer upon whom the duty was laid to spread the tax. That report is quoted in full above, and is, it must be said, somewhat peculiar in its methods of reaching the result intended. But it was evidently understood by those to whom it was addressed and whose duty it became to act upon it, and is, we think, easily understood upon a moment's examination. It first gives, *seriatim*, the estimate of the committee of the sums necessary to meet the requirements of the several funds enumerated in section 178 of the statute, and foots them up at $73,000. It then states the total assessment of real and personal property for that year at $8,899,655, and points out that, consequently, the limit of the tax to be raised in that year is $88,996.55, and it then proceeds to demonstrate that such amount will be sufficient to meet all the estimated demands of the city for the year. This it does by first deducting from the amount proposed to be raised, the three-tenths of one per cent of the total assessment allowed by section 225 to be raised for the public improvement fund (pavements, etc.). This leaves only $62,297.59 to meet the $73,000, estimated to be necessary for the other funds; but this deficiency, it shows, may be made up, and more, by the receipts from license fees, fines, etc., estimated at $12,000, which will give the sum of $74,297.59, applicable to the funds enumerated in section 178. So considered, the report is easily understood, and without ambiguity. The amount of tax to be raised is reported at the limit of the statute, viz.: $88,996.55. At that sum it was fixed, and ordered to be spread upon the assessment roll by the approval and adoption of the report; and at that sum it was spread upon the roll — as we are bound to assume, because nothing appears to the contrary.

The main question in this case does not appear to have arisen in

any adjudicated case in this State, but the principles here adopted were applied *mutatis mutandis*, in two cases, by the Supreme Court of Iowa. (*West* v. *Whitaker*, 37 Iowa, 598; *Snell* v. *Fort Dodge*, 45 id. 568.) In the former of those cases, which was strikingly like the present in essential features, the court say: "A more formal entry might have been made, and the auditor might have been directed to place the tax upon the tax list. But it is well settled that a tax cannot be enjoined for such technical defects, omissions or mere irregularities. The purpose to levy the tax, and have it collected, is plainly manifest, and substantially in the manner provided by law."

In this case we think there was no failure to comply with the substantial requirements of the charter of the new city of Niagara Falls, and that the writ of certiorari should be quashed, and the proceedings of the defendants in all things confirmed.

All concurred.

So ordered, with costs to be paid by the relators. Writ of certiorari quashed, and the proceedings of the defendants in all things confirmed, with costs to the defendants.